UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARA B. HOSTETLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-cv-00708-TWP-TAB ) |
| CITY OF SOUTHPORT, THOMAS L. VAUGHN, and JASON SWANSON, | ) ) ) ) |
| Defendants. | ) |

### ENTRY ON DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

This matter is before the Court on Motion for Partial Judgment on the Pleadings. ([Filing No. 19](#)) filed by Defendants City of Southport ("Southport"), Southport Chief of Police Thomas L. Chief Vaughn ("Chief Vaughn"), and Jason Swanson ("Swanson") (collectively, "Defendants"). Following the search of Plaintiff Shara Hostetler's ("Shara") home, she filed this action asserting a violation of her Fourth Amendment rights under 42 U.S.C. § 1983 ("§ 1983") due to an alleged illegal search, and state law claims for false arrest, malicious prosecution, trespass, negligence, defamation, and intentional infliction of emotional distress. ([Filing No. 1](#).) Defendants request that the Court enter Judgment for the Defendants on the entirety of claims with the exception of Shara's Fourth Amendment unconstitutional search. For the reasons stated below, Defendants' Motion is **granted in part and denied in part**.

### I. BACKGROUND

The following material facts are not in dispute and are viewed in a light most favorable to Shara Hostetler as the non-moving party. This case and its companion case, *Marc D. Hostetler v. City of Southport,* 1:17:1564 TWP-TAB, both arise out events leading up to (and including) April

25, 2015, which culminated in a search of Shara's home, and the arrest of her friend and co-parent, Marc Hostetler ("Marc"). ([Filing No. 1 at 3](#).) At the time of the search, Shara was running for Clerk-Treasurer of Southport, Indiana, in a very tight race. Chief Vaughn's wife, Jane Vaughn, was employed as Southport's incumbent Deputy Clerk-Treasurer and supported Shara's opponent in the upcoming election. *Id.* Chief Vaughn wished to arrest Marc in order to embarrass Shara and bring about her electoral defeat.

Shara alleges the following. Chief Vaughn offered to hire Swanson as a police officer with the Southport Police Department if Swanson could find a way to arrest Marc. *Id.* at 2. Chief Vaughn informed Swanson that Marc was illegally carrying a gun, which Swanson presented as an "anonymous tip" to a court in order to obtain a warrant to search Shara's house at 7820 Partridge Road, Indianapolis, Indiana. *Id.* at 3. In the probable cause affidavit to the court, Swanson mispresented the address at 7820 Partridge Road as Marc's house. The search warrant was executed on April 25, 2015, by Swanson and other Southport police officers. Shara's personal handgun (which she kept under her mattress) was seized during the search. Several days later, Swanson threatened to arrest Shara and remove her children from her custody for child endangerment (due to the handgun being kept in her house), but also told her that she could avoid arrest by stating that the handgun belonged to Marc. Shara maintained that the handgun belonged to her. *Id.*

Swanson subsequently executed another search warrant, this time on Marc's residence. The search yielded some old uniforms and police paraphernalia that apparently Marc did not return from previous law enforcement employers, including the Southport Police Department ("SPD"), Marion County Sheriff, Marian College Police, and the Indiana War Memorial Police. *Id.* at 4. Marc was arrested for impersonating a police officer, although the charges were later dismissed.

*Id.* Shara was not charged with any crime. In an effort to tarnish her image during the primary election, Chief Vaughn, Swanson, and other SPD officers told her neighbors and other Southport citizens that she was harboring a fugitive and that criminal charges were pending against her. Following Marc's arrest, Chief Vaughn hired Swanson as a full-time employee of the SPD. *Id.* Ultimately, following the negative publicity associated with the search of Shara's residence and the arrest of Marc, she lost the election for Clerk-Treasurer by 17 votes. *Id.* at 4.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. Rule 12(c) motions are reviewed under the same standard as a motion to dismiss under 12(b)(6). *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (*quoting Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). The facts in the complaint are viewed in a light most favorable to the non-moving party; however, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (*quoting R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

## III. DISCUSSION

Southport moves for partial judgment on the pleadings asserting that other than her Fourth Amendment claim, Shara's claims fail to state a claim upon which relief can be granted, and the

officers are entitled to immunity under the Indiana Tort Claims Act ("ITCA") on the state law claims. (Filing No. 20 at 2.) I her Response, Shara withdrew her state law claims against Southport for false arrest, negligence, trespass, and intentional infliction of emotional stress. (Filing No. 26 at 6-7.) The claims that remain are her federal claims under § 1983 (including claims against Chief Vaughn in his official and individual capacity), a *Monell* claim for municipality liability, and state law claims for malicious prosecution and defamation against Southport. The Court will address each argument in turn.

**A.     Federal Claims**

Defendants concede that they are not seeking partial judgment on the pleadings on Shara's Fourth Amendment unreasonable search claim. (Filing No. 20 at 3.) Defendants assert that Shara has failed to allege a valid *Monell* claim against Southport or Chief Vaughn in his official capacity, and that the claims against Chief Vaughn in his individual capacity also fail under § 1983.

**1.     *Monell* / Official Capacity Claims**

To state a *Monell* claim against a city for violation of right to equal protection, a plaintiff is required to "plead[ ] factual content that allows the court to draw the reasonable inference" that the City maintained a policy, custom, or practice of intentional discrimination against a class of persons to which plaintiff belonged. *See Iqbal*, 129 S.Ct. at 1949 (this should be a full cite); *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978). In order to find a municipality liable under § 1983, the plaintiff must prove that a municipal policy or custom caused their injury. *Abbott v. Vill. of Winthrop Harbor,* 205 F.3d 976, 981 (7th Cir. 2000). An underlying constitutional claim "is a necessary element of a *Monell* claim." *White v. City of Chicago,* 829 F.3d 837, 844 (7th Cir. 2016).

> Courts have identified three ways in which a municipality can be liable to a plaintiff for a civil rights violation resulting from government policy:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Abbott,* 205 F.3d at 981. At this stage, the Court accepts as true Shara's alleged underlying constitutional violation resulting from an unreasonable search. Additionally, Southport has not put forward an argument that the underlying constitutional claim is invalid. Nevertheless, Southport contends that Shara's *Monell* claim and the claim against Chief Vaughn in his official capacity, are based on an impermissible theory of *respondeat* superior, which the parties agree cannot form the basis of a *Monell* claim. ([Filing No. 20 at 4](#).) Shara responds that the action against Southport is based on the actions of its chief of police. Specifically, she contends that under Indiana law a chief of police is the final policymaker for a municipal police department which can serve as the basis for municipal liability under *Monell*. ([Filing No. 26 at 4](#).) Shara is correct in that the Seventh Circuit has held that "a police chief in Indiana is the final policymaker for his municipal police department." *Eversole v. Steele,* 59 F.3d 710, 716 (7th Cir. 1995). An allegation that a final policymaker caused the constitutional injury is sufficient for a *Monell* claim. Because a police chief is the final policymaker for his municipal police department, Shara clears the initial hurdle, at this stage, as she has alleged factual allegations that Chief Vaughn was personally involved in directing and providing information for the unreasonable search of her home in violation of the Fourth Amendment, which the Court accepts as true. Thus, her claims against Southport survive.

Turning to the official capacity claim against Chief Vaughn, "[u]nder 42 U.S.C. § 1983, official capacity suits represent 'only another way of pleading an action against an entity of which an officer is an agent.'" *Monell,* 436 U.S. at 690 n. 55. Any official capacity claims are really

claims against the government entity." *Campbell v. Town of Austin,* No. NA 01-222-C H/K, 2004 WL 256343, at *4 (S.D. Ind. Feb. 10, 2004). Defendants contend that Shara's claim against Chief Vaughn, in his official capacity, must be dismissed because it is in effect, an action against the city itself. The Court agrees. Chief Vaughn's official capacity claim is duplicative of the claim against Southport, and Shara has not responded to Defendants' contention. Thus, it is waived. Accordingly, Chief Vaughn is **dismissed** in his official capacity.

### 2. Chief Vaughn's Individual Capacity

"A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Rasho v. Elyea,* 856 F.3d 469, 478 (7th Cir. 2017) (citation omitted). Defendants contend that Shara's claim against Chief Vaughn in his individual capacity should be dismissed because he was not personally involved with any actions that violated Shara's constitutional rights, namely that it was Swanson that obtained the search warrant and searched Shara's residence. ([Filing No. 20 at 5-6](#).)

Shara responds that her "Complaint alleges that Chief Vaughn directed Swanson to arrest Marc by supplying Swanson with false information, which Swanson then presented to the Marion Superior Court in order to obtain a search warrant on the house of Chief Vaughn's political enemy, Shara." ([Filing No. 26 at 5](#).) She further contends that the officers knowingly, falsely portrayed the house to be Marc's residence when they knew it to be hers. "While the defendant need not have participated directly in the deprivation of the plaintiff's constitutional right to be held liable, he or she must nonetheless have 'known about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see.'" *Rasho,* 856 F.3d at 478 (citation and quotation marks omitted). Although Chief Vaughn did not directly participate in the *execution* of

6

the search of Shara's home, she has presented facts that Chief Vaughn was an integral part in initiating, facilitating, and approving the events that allegedly deprived her of her constitutional rights, which the Court accepts as true. ([Filing No. 26 at 5](#).) Moreover, she asserts that the facts will be fleshed out further in discovery, which will show that Swanson was a "cat's paw" to achieve Chief Vaughn's ends of embarrassing Shara through the alleged false arrest of Marc. Defendants' motion to dismiss the § 1983 claim against Chief Vaughn in his individual capacity is **denied**, as Shara has alleged facts that support his personal involvement in directing the deprivation of her constitutional rights.

**B.** **State Law Claims**

As noted previously, Shara has withdrawn all state law claims except for her malicious prosecution and defamation claims. Southport asserts immunity under the ITCA from Shara's state law torts. The Court will address each argument in turn.

**1.** **Malicious Prosecution**

"The elements of a claim for malicious prosecution under 42 U.S.C. § 1983 are: (1) plaintiff must satisfy the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution must be committed by state actors; and (3) plaintiff must have been deprived of liberty." *Chandler Nat. Gas Corp. v. Barr,* 110 F. Supp. 2d 859, 874–75 (S.D. Ind. 2000). Southport asserts two bases for dismissing Shara's malicious prosecution claim. First, Southport correctly asserts that Shara's failure to respond to its Motion for Judgment on the Pleadings with regards to the malicious prosecution claim results in waiver of the claim. ([Filing No. 27 at 2](#) n.2.) *See Farnham v. Windle,* 918 F.2d 47, 51 (7th Cir. 1990). Second, and substantively, Southport contends that Shara's malicious prosecution claim fails because she concedes that she was never arrested or prosecuted. ([Filing No. 20 at 8](#).) The Court agrees. Moreover, it was not Shara that

7

suffered the required element of deprivation of liberty; rather it was Marc who was arrested, although charges were later dropped. Therefore, Southport's Motion is **granted** on the claim of malicious prosecution.

### 2. Defamation

To maintain an action for defamation, a plaintiff must prove four elements: "(1) a communication with a defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007). A communication is defamatory *per se* if it imputes: "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Id.* at 596. The defamatory nature of a communication must appear without resort to extrinsic facts or circumstances. *Branham v. Celadon Trucking Servs., Inc.,* 744 N.E.2d 514, 522 (Ind. Ct. App. 2001).

Shara contends that the statements made about her harboring a fugitive and being the subject of criminal investigation are defamatory *per se.* While the Complaint does not state who specifically from the SPD made these statements and to whom they were made (other than to neighbors and other Southport citizens), at this stage, the Court must accept as true the factual allegations contained in the Complaint. Shara's defamation claim clears the initial hurdle in that the Court will grant a 12(c) motion only if it appears beyond doubt that she cannot prove any facts that would support her claim for relief. Shara contends that discovery will show that these statements were made to citizens of Southport unconnected with the investigation of Marc's alleged crimes and made for the purpose of embarrassing her politically. Having cleared the initial hurdle, at the next stage Shara will have to present admissible evidence on the defamation claim. Accordingly, Southport's motion is **denied**.

### 3. ITCA Immunity

The ITCA provides substantial immunity for political subdivisions, and its employees, for conduct within the scope of the employee's employment. *Bushong v. Williamson,* 790 N.E.2d 467, 472 (Ind. 2003). "Generally, whether the tortious act of an employee is within the scope of employment is a question of fact. However, under certain circumstances the question may be determined as a matter of law." *Id.* at 473. Employees found acting within the scope of employment is dispositive on any claims under the ITCA. *Id.* at 474. (Indiana Supreme Court holding defendant had immunity under the Indiana Tort Claims Act due to being within the scope of employment despite the plaintiff's allegation that the defendant's acts were criminal.) Indiana Code § 34–13–3–3(8) explicitly provides immunity for governmental employees carrying out law enforcement duties, unless the act of enforcement constitutes false arrest or imprisonment. *Johnson ex rel. Indiana Dep't of Child Servs. v. Marion Cty. Coroner's Office,* 971 N.E.2d 151, 156 (Ind. Ct. App. 2012).

Having withdrawn most of her state law claims and the Court having dismissed the malicious prosecution claim, Shara's defamation claim is the only remaining claim that ITCA immunity could attach to. At the outset, the Court notes that Southport, in its Reply Motion, raises judicial proceedings immunity for the first time, despite the fact that its Motion for Judgment on the Pleadings refers exclusively to law enforcement immunity. This was improperly raised and the Court will not consider it.

Shara contends that defamatory statements harbored against her were outside the scope of law enforcement duties, and made for the purpose of embarrassing her politically. ([Filing No. 26 at 7.](#)) The Indiana Supreme Court "has clarified that "[i]n Indiana, an employee's tortious act may fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business." *City of Anderson v. Weatherford,* 714 N.E.2d 181, 186 (Ind. Ct. App. 1999).

9

Due to the alleged personal nature of Chief Vaughn's actions in this case, Shara has sufficiently pled that Chief Vaughn's alleged tortious acts were not for the purpose of furthering SPD business. Moreover, the egregious nature (and personal stake) of allegedly setting out to interfere with a tight political race to secure a defeat using allegedly manufactured criminal charges as an instrument is not within the scope of employment. The Court notes that Shara's defamation claim rests on the assertion that the statements were not made in the course of interviewing witnesses or other investigative acts, *i.e.*, carrying out law enforcement duties; rather she contends they were made to persons outside of SPD not participating in the investigation of Marc. ([Filing No. 26 at 6-7](#).) Even under ITCA's broad immunity shield, acts done solely for personal gain would not be immunized. Accordingly, ITCA's law enforcement immunity does not bar Shara's defamation claim, and Southport's motion is **denied**.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Partial Motion for Judgment on the Pleadings ([Filing No. 19](#)) is **GRANTED in part** and **DENIED in part.** It is **granted** as to Shara Hostetler's malicious prosecution claim. It is **denied** as to her federal claims against Chief Vaughn, in his official capacity, Swanson, in his individual capacity, the *Monell* claim against the City of Southport, and a state law claim for defamation. Shara Hostetler's illegal search claim also **remains pending.** She has withdrawn her state law claims for trespass, negligence, false arrest, and intentional infliction of emotional distress so those claims are **dismissed** with prejudice.

**SO ORDERED.**

Date: 3/27/2018

*[Signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@btlmlaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP-New Albany
jlowe@k-glaw.com

R. Eric Sanders
KIGHTLINGER & GRAY LLP
esanders@k-glaw.com