# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARA B. HOSTETLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-cv-00708-TWP-TAB |
| CITY OF SOUTHPORT, THOMAS L. VAUGHN, and JASON SWANSON, | ) ) ) ) |
| Defendants. | ) |

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants the City of Southport ("Southport"), Thomas L. Vaughn, and Jason Swanson (collectively, "Defendants") (Filing No. 39). Plaintiff Shara Hostetler ("Shara") filed this action alleging violation of her Fourth Amendment rights under 42 U.S.C. § 1983 ("§ 1983") following an illegal search of her home, and state law claims. Defendants contend they are entitled to judgment as a matter of law. For the following reasons, the Court **grants** Defendants' Motion for Summary Judgment.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Shara as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This case and its companion case, *Marc Hostetler v. City of Southport*, 1:17-cv-001564-TWP-TAB, both arise out of events leading up to and including April 25, 2015, which culminated in a search of Shara's home, and the arrest of her friend and co-parent, Marc

Hostetler ("Marc"). ([Filing No. 41-6.](#))[1] The facts and applicable law in both matters are so similar that this Court adopts, for the most part, the reasoning and analysis of the companion decision.

Shara and Marc lived together at 7820 Partridge Road, Southport, Indiana (the "Partridge Road residence") for approximately a year before Marc moved out in January 2015, and they remained good friends and co-parents of the son they share. After moving out in January 2015, Marc frequently spent time at Shara's home on Partridge Road, visiting and babysitting his son, as well as Shara's four other children. Marc would sometimes spend the night and "maybe a third of the time" spend the day at the Partridge Road residence, while co-parenting. Marc was not on Shara's lease, and he owned his own condominium on Punto Alto Circle located in Indianapolis, Indiana (the "Punto Alto Circle condo").

In 2015, Shara was employed as the secretary for the Warden at Marion County Jail II in Indianapolis. At the time of the search, she was seeking the Republican nomination for Clerk-Treasurer of Southport, Indiana. Throughout her campaign, she received the support and assistance of Marc, and he frequently visited Shara's home on Partridge Road in Southport to do campaign work, babysit and to visit his son

Defendant Thomas L. Vaughn ("Chief Vaughn") was the chief of police in Southport. His wife, Jane Vaughn, was employed as Southport's Deputy Clerk-Treasurer under Clerk-Treasurer Dianna Bossingham, who was the incumbent and Shara's opponent in the 2015 primary election. ([Filing No. 49-3 at 37.](#))

In early 2015, at a Southport City Council meeting, Chief Vaughn received a tip from Ashley Davis ("Davis"), that Marc was "impersonating a police officer again and that he was carrying a firearm." ([Filing No. 41-1 at 5.](#)) Davis was Dianna Bossingham's campaign manager

---

[1] Although they share the same last name, Marc and Shara were never married. In 2012, after the birth of their son, Shara legally changed her last name to Hostetler because she wanted to share the name with her son by Marc.

and a contributor to Dianna Bossingham's political committee. (Filing No. 49-5 at 5, 10.) Davis told Chief Vaughn that she wished to remain anonymous because she was "scared" of Marc. (Filing No. 41-1 at 6.) Davis did not specify when or where or how Marc committed these acts—and Vaughn did not ask her for details. Chief Vaughn responded that he would give the information to a detective and let him check into her complaint. *Id.* at 5. Chief Vaughn assigned the investigation of Davis's allegations to Jason Swanson ("Swanson"), an unpaid reserve detective on Southport's police department. (Filing No. 41-1 at 5, 10.)

Unbeknownst to Swanson, Chief Vaughn's wife, Jane Vaughn, was Bossingham's Deputy Clerk and actively campaigned for Bossingham. Facebook pictures, show Chief Vaughn and Bossingham together at campaign events. On primary election day, Shara observed Chief Vaughn and Davis talking together at a polling place as Davis campaigned for Bossingham. Shara believes Chief Vaughn wished to arrest Marc to damage Shara's reputation with voters and ensure that she would lose the primary election.

**A.     The Investigation**

Swanson had been a volunteer detective for the Southport Police Department since March 2015 (Filing No. 41-2 at 4-6). Within a week of being hired, he received a telephone call from Chief Vaughn relaying the complaint from Davis that Marc was carrying a firearm and impersonating an officer. *Id.* at 6. Chief Vaughn did not inform Swanson that Marc had previously worked at the Southport Police Department. (Filing No. 41-1 at 6.)

Swanson telephoned Davis, and Davis reported that she had seen Marc wearing a firearm, that he kept it in his vehicle and she believed he was representing himself as a police officer. *Id.* Swanson began an investigation, which included checking Marc's social media pages. On Marc's

3

Facebook page, he discovered a photograph of Marc wearing a Southport Police Department polo shirt on which the badge is partially visible. *Id.* at 23.

Marc had previously worked as a deputy for the Marion County Sheriff from 1999-2002, a Perry Township Constable from 2002 until January 2005, and as a consultant for the Southport Police Department. ([Filing No. 41-3 at 8](#).) In January 2005, Marc was arrested for criminal trespass and stalking a former girlfriend. He was ultimately convicted on the felony stalking charge; however, the D felony was automatically reduced to a misdemeanor upon his successful completion of probation. ([Filing No. 49-3 at 33](#).) In 2009, Marc pled guilty to D felony battery. ([Filing No. 41-5, Filing No. 41-3 at 11](#).) After his arrest and conviction on the D felony battery Marc worked various jobs as a security guard. He also worked part-time and unpaid for the Southport Police Department as a consultant doing background checks on potential hires and serving as Chaplain. ([Filing No. 49-3 at 47-49](#).) The Southport Police Department issued him a uniform and a badge identifying him as a certified chaplain. *Id* at 49.

Early in his investigation, Swanson learned that Marc used two addresses: a property records search through the assessor's office revealed the condominium he owned on Punto Alto Circle in Indianapolis, and Shara's home at 7820 Partridge Road in Southport, which Marc had used as a business address and where he was registered to vote. ([Filing No. 41-2 at 7](#), 15-16.) Swanson sat in his car and surveilled both locations several days a week for approximately a month. *Id.* at 7. He noticed that Marc went to and from the Partridge Road residence almost every day but almost never visited the Punto Alto Circle condo. *Id.* Swanson never observed Marc wearing an officer's uniform or doing anything to suggest he was impersonating an officer, although he did observe Marc wearing tactical gear on his way to his job as a security guard. *Id.* at 8-9. On at least three occasions during his surveillance Swanson observed Marc carrying a

handgun on his left hip. *Id.* at 13. Marc denies that he ever carried or possessed a firearm of any type during this period, and the only thing he would carry was his iPhone cell phone. ([Filing No. 49-3 at 75](#).) Marc concedes that during the time he was surveilled, he did not have a handgun permit to carry a firearm and his felony battery conviction precluded him from possessing a firearm. *Id*. at 73-74.

Swanson did not arrest Marc when he believed he saw him carrying a gun; instead he continued his surveillance to see whether Marc would impersonate an officer. *Id.* at 8-9. When Marc did not impersonate a police officer, Swanson sought a warrant to search the Partridge Road residence.

**B.** **The Search**

On April 24, 2015, Swanson presented a Search Warrant Affidavit for the Partridge Road residence to a magistrate judge. The Affidavit presents the following:

> On or about March 16th, 2015, This [sic] affiant received information from an individual known to police and wishes to remain anonymous, that Marc D. Hostetler, DOB [ ], had been representing himself to be a police officer and was in possession of at least one firearm. As recently as February of 2015, the individual observed Hostetler to be in possession of a handgun and observed him to be wearing a shirt that had a Southport Police Department badge emblem on the left breast.
>
> This affiant is familiar with Hostetler because he is a former employee of the Marion County Sheriff's Department and the Southport Police Department. This affiant is aware that Mr. Hostetler was convicted of Stalking as a D felony on February 18, 2005, under Indiana Cause Number 49G17-0412-FD-223584. On October 24, 2007, the court granted Mr. Hostetler's Petition for Alternate Misdemeanor Sentencing and the judgment of conviction was entered as a Class A Misdemeanor. Mr. Hostetler was convicted of Battery as a D Felony on January 8, 2009, under Cause Number 49G16-0711-FD-243299. On April 17, 2015, the court took Mr. Hostetler's Petition for Alternate Misdemeanor Sentencing under advisement. The felony battery conviction precludes Mr. Hostetler from possessing a firearm. In addition, a review of Indiana State Police records by your Affiant indicated Hostetler does not have a handgun permit.
>
> On March 16th – April 18th, 2015, this affiant conducted surveillance on the residence of Mr. Hostetler, as reported by the known complainant, to be located at

> 7820 Partridge Road, Southport, IN 46227. This affiant observed Mr. Hostetler exit the residence several times during this period with a handgun on his left waistband, specifically on March 20, 2015, April 2, 2015, April 3, 2015, and April 10, 2015. On two of those dates, this affiant observed Mr. Hostetler take the weapon from his waistband and place it in the driver side compartment under the seat or dashboard in his vehicle, a maroon Chevy Avalanche, Indiana license plate number TK690LUU. On one of those dates he then returned to the house. On the other date, he then entered the car and drove away from the residence.
>
> On March 20th, 2015, I conducted a search of Social Media for Marc Hostetler. I located a profile on the website "Facebook" which appears to belong to Mr. Hostetler. A photo added on 11/12/2013 that shows a male, who I recognize as Marc Hostetler, wearing a Southport Police Department shirt and appears to be a current representation of Mr. Hostetler's appearance.

([Filing No. 41-7](Filing No. 41-7).) That same day, a Marion Superior Court Magistrate issued a search warrant for the Partridge Road residence and for Marc's vehicle. Swanson and other officers executed the search warrant the next day. They did not find a firearm on Marc's person or in his vehicle. ([Filing No. 49-7 at ¶ 8](Filing No. 49-7 at ¶ 8).) But their search of the Partridge Road residence turned up a small loaded pistol under a mattress, which belonged to Shara. ([Filing No. 41-6](Filing No. 41-6); [Filing No. 49-2 at 55-56](Filing No. 49-2 at 55-56), 61-64.) The police also found two .40 caliber Glock magazines stamped "Law Enforcement/Gov't Use Only," a holster for a handgun, and some Marion County Sheriff's Department police clothing. ([Filing No. 41-6](Filing No. 41-6).)

While other officers were searching the Partridge Road residence, Swanson prepared an application for a warrant to search the Punto Alto Circle condo, which a judge granted that same day. ([Filing No. 41-12](Filing No. 41-12).) The search of that property did not turn up a firearm but did reveal firearm accessories, such as a holster, a magazine, and gun cleaner. ([Filing No. 41-6](Filing No. 41-6).) It also turned up old police badges, old identification cards Marc would have used while employed as a law enforcement officer, and miscellaneous police insignia pins and patches. *Id.* Additionally,

police found a signal flare device, three multi-point throwing stars, and five multi-point playing card throwing knives. *Id.*

C. **Marc's Arrest and Criminal Charges**

Following the search of the Partridge Road residence, Swanson initially arrested Marc for carrying a handgun without a license. ([Filing No. 41-2 at 10](#).) After searching the Punto Alto Circle condo, Swanson recommended additional charges of impersonating an officer and theft. *Id.* The prosecutor declined to charge Marc with impersonating an officer but did charge him with theft, possession of a Chinese throwing star, and carrying a handgun without a license. *Id.* at 11. The prosecutor dismissed all charges against Marc following a successful motion to suppress the evidence obtained from the two searches. ([Filing No. 49-3 at 124-125](#)).

After Marc's arrest but before the charges against him were dismissed, Shara met with Swanson at the Southport police station. Shara interpreted their conversation as Swanson urging her to implicate Marc in ownership of the firearm recovered from the Partridge Road residence and threatening her with legal consequences if she did not. ([Filing No. 49-2 at 73-76](#).) But Shara insisted the firearm belonged to her. No charges were ever filed against Shara. ([Filing No. 49-2 at 25](#).)

Shara believes that Chief Vaughn used Swanson as a pawn to procure Marc's arrest to embarrass her and boost the prospects of his wife's boss, Dianna Bossingham, winning the election for Clerk-Treasurer. Approximately a week before the primary election, neighbors Cheryl and Charlie Eaton told Shara that she was "harboring a fugitive" and neighbor Jeff told her that she was supposedly under investigation and pending criminal charges. ([Filing No. 49-2 at 66-67](#).) *Id.* at 78. Shara lost her election by 17 or 18 votes.

7

## D. Procedural History

Shara filed this action asserting claims of illegal search, negligence, trespass, false arrest, defamation, malicious prosecution, and intentional infliction of emotional distress against Chief Vaughn, Swanson, and Southport. (Filing No. 1.) Defendants moved for partial judgment on the pleadings, arguing Shara's claim for illegal search and her claims under Indiana tort law were inadequately pled and Chief Vaughn and Swanson were immune from the state law claims under the Indiana Tort Claims Act. (Filing No. 20.) The Court granted the motion in part, dismissing Chief Vaughn in his official capacity but not in his individual capacity and granting judgment in favor of Defendants on Shara's claim for malicious prosecution. (Filing No. 35 at 10.) Shara withdrew her claims for trespass, negligence, false arrest, and intentional infliction of emotional distress. *Id.* Thus, Shara's Fourth Amendment Unconstitutional Search claim against Chief Vaughn and Swanson in their individual capacities, her Fourth Amendment Unconstitutional Search *Monell* claim against Southport, and her state law claim for defamation against Southport remain. Defendants moved for summary judgment on those claims. (Filing No. 39.)

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S.Ct. 1348 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the

non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

Defendants argue they are entitled to summary judgment because the evidence does not support a claim that they illegally searched Shara's home and because the Indiana Tort Claims Act immunizes Southport from her defamation claim. The Court will first address the Fourth Amendment claims before turning to the state law claim.

9

A.     **Fourth Amendment Unconstitutional Search Claims**

Shara originally asserted lack of nexus because Marc did not live at the Partridge Road residence, but it appears she has abandoned this argument as she argues that Marc was legally allowed to possess a firearm in his own home, referring to the Partridge Road residence. Moreover, there is sufficient evidence to support a reasonable belief that Marc used both addresses and frequently resided at Shara's residence. Defendants argue that they are entitled to summary judgment on Shara's Fourth Amendment claims because the search of her residence was not unreasonable, Chief Vaughn was not involved in orchestrating the search, and Chief Vaughn and Swanson are entitled to qualified in immunity.

1.     *Monell* **Claim Against Southport**

A local governmental body is liable under 42 U.S.C. § 1983 when "a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" is related to the unconstitutional conduct of an employee. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 438 U.S. 658, 690 (1978). There are three means through which a local governmental body can incur *Monell* liability: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Abbott v. Village of Winthrop Harbor*, 205 F.3d 976, 981 (7th Cir. 2000).

Shara argues a person with final policymaking authority, namely Chief Vaughn, instigated the violation of her Fourth Amendment rights. Defendants do not dispute that Chief Vaughn qualifies as a person with final policymaking authority, but they offer two counter-arguments. First, they assert the evidence does not establish a violation of Shara's Fourth Amendment rights

because probable cause supported Swanson's warrant application. Second, they argue that Chief Vaughn was not personally involved in either ordering the search of Shara's home or filling out the warrant application to support the search.

Before determining whether the search violated the Fourth Amendment, the Court will address whether Chief Vaughn had sufficient personal involvement to implicate Southport under § 1983. Shara alleges the following facts tie Chief Vaughn to the search of her home: he received the initial tip from Davis ([Filing No. 41-1 at 24](#)), he assigned the case to Swanson without informing Swanson of Davis' possible political motivation ([Filing No. 41-2 at 18-21](#)), he was on the telephone with Swanson during the search of Shara's house ([Filing No. 49-7 at ¶ 9-10](#)) and physically present for the search of Marc's Punto Alto Circle condo ([Filing No. 41-1 at 32-33](#)), and he turned a blind eye to Swanson's investigation to maintain deniability. Defendants argue that Chief Vaughn never gave any direction to Swanson after assigning him to the case, and that Swanson conducted surveillance and sought a search warrant on his own initiative. *Id.* at 28-30.

This disagreement is a dispute of material fact that precludes a finding of summary judgment on this basis. Shara has designated evidence indicating Chief Vaughn was giving Swanson instructions during the search of her home ([Filing No. 49-7 at ¶ 9-10](#)), while Defendants have designated evidence that Chief Vaughn was totally uninvolved with the search of the Partridge Road residence. ([Filing No. 41-1 at 29-32](#).) This conflicting evidence is resolved in favor of Shara at the summary judgment stage, accordingly, the Court finds that Chief Vaughn was involved with the search of her home.

Defendants next challenge Shara's *Monell* claim on the grounds that, even if Chief Vaughn was involved with the search, Shara has not designated sufficient evidence to show that the search of her home violated her Fourth Amendment rights. "A warrant request violates the Fourth

11

Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003). An officer acts with reckless disregard to the truth if the officer "entertained serious doubts as to the truth of the statements, had obvious reasons to doubt their accuracy, or failed to disclose facts that he or she knew would negate probable cause." *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012) (internal quotations omitted). In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. *State v. Spillers,* 847 N.E.2d 949, 953 (Ind.2006).

Shara first argues that Swanson's affidavit in support of the search warrant request did not establish a sufficient nexus between the suspected crimes and the Partridge Road residence. She contends Swanson made false statements in requesting the search warrant because Indiana Code § 35-47-2-1(b)-(c) allows unlicensed possession of a firearm within your own dwelling or within the dwelling of another person who gives consent. She contends no law prohibited Marc from keeping a firearm in his home or the home of his ex-girlfriend so long as she consented. Shara asserts it is reasonable to infer that Swanson acted with reckless disregard for the truth and that Swanson made a false statement in his search warrant affidavit when he said that Marc's "felony battery conviction precludes [him] from possessing a firearm." (Filing No. 49-7.)

However, Shara is incorrect. The Case Chronology Summary reflects that on January 8, 2009 Marc was convicted of Battery as a class D felony and sentenced to 545 days, executed 90 days, suspended 455 days and place on probation for 364 days. (Filing No. 41-5 at 5.) The Court cannot find the affiant's statement that Marc's felony conviction prevented him from legally

possessing a firearm, is a "false statement" because under federal law Marc was a person prohibited from possessing a firearm[2]. Moreover, based upon his observations, it was reasonable for Swanson to believe that a firearm could be found at the Partridge Road residence where Marc spent a significant amount of time, and where he observed Marc carrying what he believed to be a firearm on at least three occasions. *See Allen v. State* 798 N.E. 2d 490, 499 (Ind. Ct. App. 2003) ("… we find that a reasonably prudent person could make a practical, common-sense determination, given all the circumstances set forth in the affidavit, that there was a fair probability that the weapons used in the series of murders would be found at the apartment"). Accordingly, the Court rejects Shara's argument that the affidavit lacked a sufficient nexus between the items to be searched for and the place to be searched.

Even if Swanson made a false statement, to show an unreasonable search, Shara must also designate evidence that "the false statements were necessary to the determination that a warrant should issue." *Knox*, 342 F.3d at 658. Swanson did not swear in the affidavit that he saw Marc impersonating a police officer or wearing police clothing during his surveillance. The affidavit discloses that Marc had been a law enforcement officer in multiple jurisdictions, meaning the likelihood of finding police gear and possibly old uniforms was high, but it would not be evidence that Marc had committed the crime of impersonating an officer. Given the scant evidence that Marc impersonated an officer and the miniscule likelihood of discovering more evidence of that crime while executing a warrant, it is reasonable to infer that the issuing judge relied heavily on Swanson's assertion that a search was likely to yield evidence of illegal possession of a handgun. No Fourth Amendment constitutional injury was caused by Chief Vaughn, therefore, the Court **grants** summary judgment as to the *Monell* claim against Southport.

---

[2] A person convicted in any court of a crime punishable by imprisonment for a term exceeding one year (regardless of whether a person is actually imprisoned) cannot possess any firearm in any location. *See* 18 U.S.C. 922(g).

13

### 2. Claims Against Chief Vaughn and Swanson in their Individual Capacities

Defendants ask for summary judgment on the Fourth Amendment claims against Chief Vaughn and Swanson in their individual capacities. They echo the same arguments the Court discussed above—that Chief Vaughn was not personally involved in the search of Shara's home and that Shara has not designated evidence sufficient to support a Fourth Amendment claim. For the same reasons outlined in the previous section, the Court finds there is a factual dispute on the issue of whether Chief Vaugh was personally involved in the search, but Court **grants summary** judgment because there was no reckless disregard for the truth or false statements in the affidavit for the search warrant. There was clearly probable cause for the search of her home; accordingly, Shara's Fourth Amendment claims against Chief Vaughn and Swanson individually, fail.

### 3. Qualified Immunity

Defendants argue that even if the *Monell* claims were to survive summary judgment, both Chief Vaughn and Swanson are entitled to qualified immunity in their individual capacities. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted). In determining whether qualified immunity applies, courts decide "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.*

To show a constitutional right is clearly established, a plaintiff must point out a clearly analogous case establishing the right to be free from the specific conduct at issue or allege that the

conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights. *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008). "The Supreme Court has instructed that the clearly established law should not be defined at a high level of generality." *Muhammed v. Pearson*, 900 F.3d 898, 904-05 (7th Cir. 2018) (internal quotations omitted). While general statements of law can sometimes be sufficient to give officers fair and clear warning, in light of pre-existing law the unlawfulness must be apparent. *Id.* at 905. And though a case directly on point is not required, "the clearly established law must be particularized to the facts of the case." *Id.*

Defendants make three arguments in support of their motion for summary judgment based on qualified immunity: (1) Chief Vaughn has qualified immunity because a reasonable officer in his position would have believed probable cause supported the search of the Partridge Road residence, (2) Swanson is entitled to qualified immunity because Shara cannot show that he violated her constitutional right, and (3) Swanson is entitled to qualified immunity because Shara cannot show that the constitutional right at stake was clearly established at the time of the alleged violation.

The specific case Shara alleges should have alerted Chief Vaughn and Swanson that their conduct was unlawful is *Rader v. State*, 932 N.E.2d 755 (Ind. Ct. App. 2010). That case requires a law enforcement officer, in the affidavit supporting his warrant request, to establish "a logical connection, or nexus, between the suspect and the location to be searched." 932 N.E.2d at 759. Again, Shara argues it was legal for Marc to possess a handgun in her home, if she consented, and because there was little likelihood the search would yield evidence of impersonating an officer, there was no nexus between the place of the search and the object of the search. Chief Vaughn is entitled to qualified immunity because, viewing the facts in the light most favorable to Shara as

the non-moving party, there was clearly a nexus between the crimes Southport was investigating Marc for and Shara's home.

Defendants' assertions that Swanson is entitled to qualified immunity rely on the same arguments they make in their other arguments on this claim. Thus, the Court **grants** Defendants' motion for summary judgment on the Fourth Amendment claim as to Swanson. He is entitled to qualified immunity because, viewing the facts in the light most favorable to Shara as the non-moving party, there was no clearly established right which Swanson would have understood he was violating and no Fourth Amendment violation as there was no reckless disregard for the truth or false statements in the affidavit for the search of Shara's home.

**B.** **Defamation Claims**

Shara asserts defamation claims against Southport, Chief Vaughn, and Swanson. She alleges three instances of defamation: (1) two of her former neighbors told her a police officer said she was harboring a fugitive, (2) a different neighbor told her a police officer said there was a possibility criminal charges would be filed against her, and (3) a Code Enforcement Officer overheard police officers talking about how Shara had charges pending against her. ([Filing No. 49-2 at 65-77](#).)

As an initial matter, Defendants point out that Shara does not allege either Chief Vaughn or Swanson made defamatory statements about her. ([Filing No. 40 at 28-29](#).) Shara has not responded to that contention, and thus waives any argument in opposition. Accordingly, the Court **grants** summary judgment in favor of Chief Vaughn and Swanson on the defamation claim.

To succeed on a defamation claim against Southport, Shara must prove: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Kelley v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007). Defendants argue Shara's defamation claim is

deficient as a matter of law because it is based entirely on inadmissible hearsay, she cannot establish any of the elements of a defamation claim, and the Indiana Tort Claims Act immunizes Southport from this defamation claim.

The Indiana Tort Claims Act protects governmental entities and government employees acting in the scope of their employment from claims that stem from "[t]he performance of a discretionary function" or "[t]he adoption and enforcement of…a law." Ind. Code §§ 34-13-3-3(7), (8). Defendants identified the discretionary "duty to inform the public" that would qualify remarks officers made to inquiring neighbors as government function that precludes this claim under Subsection 3(7) of the Tort Claims Act. *See Bull v. Bd. of Trustees of Ball State Univ.*, 2012 WL 1564061 (S.D. Ind. 2012), *E.L.C. Elec., Inc. v. Ind. Dept. of Labor*, 825 N.E.2d 16 (Ind. Ct. App. 2005).

Here, Southport police officers were executing a search warrant and acting within the scope of their employment. Their comments to Shara's neighbors were an attempt to inform the community about the situation. While their statements may not have been accurate, the Court concludes the Indiana Tort Claims Act was meant to protect government officials from liability in situations like these so that the officers could focus on safely and efficiently executing the warrant. Shara has not responded to Defendants' contention that they are immune under the Indiana Tort Claims Act, and thus she waives any argument in opposition. Accordingly, the Court **grants** summary judgment in favor of Southport on the defamation claim.

Because the Court grants summary judgment on this issue under the Indiana Tort Claims Act, it need not address Defendants' remaining arguments.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Filing No. 39) is **GRANTED**. Summary judgment is **granted** on Shara's Fourth Amendment claims against Southport, Chief Vaughn, and Swanson, and on the claim for defamation against Southport, Chief Vaughn, and Swanson, and all claims are **dismissed**.

**SO ORDERED.**

Date: 2/25/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@btlmlaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP-New Albany
jlowe@k-glaw.com

Whitney Elizabeth Wood
KIGHTLINGER & GRAY, LLP (New Albany)
wwood@k-glaw.com